UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, TWO, et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>JOHN KERRY, et al.,<br><br>   Defendants. | Case No.  16-cv-0654-PJH<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION** |

Plaintiffs' motion for preliminary injunction came on for hearing before this court on March 30, 2016. Plaintiffs appeared by their counsel Janice M. Bellucci, and defendants appeared by their counsel Kathryn L. Wyer. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby DENIES the motion.

## BACKGROUND

This case involves a constitutional challenge to the implementation of the International Megan's Law to Prevent Child Exploitation and Other Sexual Crimes Through Advanced Notification of Traveling Sex Offenders ("IML"), Pub. L. No. 114-119, 130 Stat. 15 (2016), which was signed into law by the President on February 8, 2016.

Plaintiffs filed the complaint on February 9, 2016, and filed the present motion on March 4, 2016.[1]

The IML was enacted to "protect children and others from sexual abuse and exploitation, including sex trafficking and sex tourism." IML, Preamble. In enacting the IML, Congress noted that "[l]aw enforcement reports indicate that known child-sex offenders are traveling internationally." IML § 2(4). Congress found that "[t]he commercial sexual exploitation of minors in child sex trafficking and pornography is a global phenomenon," with millions of child victims each year. Id. § 2(5).

Congress further observed that the registration and notification provisions of the Sex Offender Registration and Notification Act ("SORNA"), enacted in 2006 as part of the Adam Walsh Child Protection and Safety Act, Pub. L. No. 109-248, §§ 102-155, 120 Stat. 587, were intended to "protect children and the public at large by establishing a comprehensive national system for the registration and notification to the public and law enforcement officers of convicted sex offenders." IML § 2(3). In Nichols v. United States, __ S.Ct. __, 2016 WL 1278473 (U.S. Apr. 4, 2016), the Supreme Court recognized that SORNA's purpose was to "make more uniform what had remained 'a patchwork of federal and 50 individual state registration systems,' with 'loopholes and deficiencies' that had resulted in an estimated 100,000 sex offenders becoming 'missing' or 'lost.'" Id., 2016 WL 1278473 at *5 (citation omitted).

Thus, the IML builds on the existing notification programs operated by the United States Marshals Service ("USMS") and the Department of Homeland Security's ICE HSI in order to provide advance notice to other countries when registered sex offenders in the United States intend to travel internationally, and to encourage reciprocal arrangements with foreign governments to receive notifications from those countries when sex offenders seek to travel to the United States. IML Preamble & § 7; see also Declaration of Acting Deputy Assistant Director Patrick Lechleitner ("Lechleitner Decl.") in opposition

---

[1] Plaintiffs filed a first amended complaint on March 9, 2016, but the original complaint is the operative complaint for purposes of the present motion.

to plaintiffs' motion, ¶¶ 4-7; Declaration of Eric C. Mayo ("Mayo Decl.") ¶¶ 3-5, 10.

In the IML, Congress criminalized the "knowin[g] fail[ure] to provide information required by [SORNA] relating to intended travel in foreign commerce." IML § 6(b)(2). Such information includes "anticipated dates and places of departure, arrival, or return[;] carrier and flight numbers for air travel [;] destination country and address or other contact information therein," et cetera. Nichols, 2016 WL 1278473 at *5 (quoting IML § 6(a)(1)(B)).

The IML establishes an "Angel Watch Center" within ICE HSI's Child Exploitation Investigations Unit, IML § 4(a), intended to carry on the activities of the former Operation Angel Watch. Lechleitner Decl. ¶ 14. Among other things, where the Angel Watch Center has identified internationally traveling individuals convicted of sexual offenses against minors and where certain conditions are satisfied, the IML provides that the Center "may transmit relevant information to the destination country about [the] sex offender." IML § 4(e)(1)-(3).

The IML also continues USMS's notification program, see Mayo Decl. ¶ 10, providing that USMS, through its National Sex Offender Targeting Center, "may – transmit notification of international travel of a sex offender to the destination country of the sex offender, including to the visa-issuing agent or agents" of the destination country, IML § 5(a)(1), and "share information relating to traveling sex offenders with other Federal, State, local, and foreign agencies and entities, as appropriate," id. § 5(a)(2). Such notifications may be transmitted "through such means as are determined appropriate" by USMS, "including through the INTERPOL notification system and through Federal Bureau of Investigation Legal attaches." Id. § 5(e). In addition, USMS may also "receive incoming notifications concerning individuals seeking to enter the United States who have committed offenses of a sexual nature." Id. § 5(a)(3). Any such incoming notification must be provided immediately to DHS. Id.

The IML attempts to close a loophole in the notification procedures, whereby an offender might seemingly comply with IML requirements by providing notice of travel to

1   one country, and might appear on a flight manifest as traveling to that country, but might
2   then travel from that first destination country to his actual destination somewhere else
3   without detection by U.S. authorities.  The IML tasks the Angel Watch Center with
4   "provid[ing] a written determination to the Department of State regarding the status of an
5   individual as a covered sex offender . . . when appropriate." IML § 4(e)(5).  Only
6   individuals who have been convicted of a sex offense against a minor and are "currently
7   required to register under the sex offender registration program of any jurisdiction" qualify
8   as covered sex offenders for purposes of this provision.  See id. § 8(c).

9   The IML prevents registered sex offenders whose offenses involved a child victim
10  from "thwarting [IML] notification procedures by country hopping to an alternative
11  destination not previously disclosed," by directing the State Department to "develop a
12  passport identifier" that would allow such individuals to be identified once they arrive at
13  their true destination. 162 Cong. Rec. H390 (daily ed. Feb. 1, 2016) (statement of Rep.
14  Smith).  The Secretary of State is directed not to issue a passport to individuals identified
15  by the Angel Watch Center as covered sex offenders unless the passport contains a
16  unique identifier.  Id. § 8(b).  The Secretary of State may also revoke a passport
17  previously issued to such an individual if it does not contain such an identifier.  Id.

18  Plaintiffs now seek a preliminary injunction to halt enforcement of §§ 4(e), 5, 6,
19  and 8 of the IML.

## DISCUSSION

A.   Legal Standard

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008); see also Munaf v. Geren, 553 U.S. 674, 689-90 (2008).  A preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted).

A plaintiff seeking a preliminary injunction must establish that he is likely to

4

succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. Winter, 555 U.S. at 20. Alternatively, the plaintiff may demonstrate that the likelihood of success is such that "serious questions going to the merits were raised and that the balance of hardships tips sharply in the plaintiff's favor," so long as the other two elements of the Winter test are met. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-32 (9th Cir. 2011).

Showing "serious questions going to the merits" requires more than establishing that "success is more likely than not," and it requires a plaintiff to demonstrate a "substantial case for relief on the merits." Leiva-Perez v. Holder, 640 F.3d 962, 967 (9th Cir. 2011). And even where success on the merits is likely or "serious questions" are raised an injunction "is not a remedy which issues as of course." Weinberger v. Romero-Barcelo, 456 U.S. 305, 311 (1982).

B.   Plaintiffs' Motion

Plaintiffs argue in their motion that they are likely to succeed on the claims asserted in the first, second, and third causes of action in the complaint, and that because they can show likelihood of success, there is a presumption of likelihood of irreparable harm.

In the first cause of action, plaintiffs allege that the passport identifier provision unlawfully compels speech, in violation of the First Amendment. Cplt ¶¶ 52-54. In the second cause of action, plaintiffs assert that by enforcing the notification and passport identifier provisions of the IML against all individuals convicted of offenses involving a minor without regard to the details of those offenses or the current threat posed by such individuals, defendants deprive plaintiffs and other affected persons of the Fifth Amendment's right to be free from arbitrary, unreasonable, and oppressive state action that bears no rational relationship to the stated goal of protecting the public. Cplt ¶¶ 55-58. In the third cause of action, plaintiffs allege that the notification provision of the IML operates as "an international travel blacklist" for individuals required to register as sex

offenders for offenses involving a minor, and that it deprives them of their liberty interests under the Fifth Amendment to travel without unreasonable burdens imposed by the government. Cplt ¶¶ 59-63.

Plaintiffs challenge two of the IML's principal provisions – the "notification" provision and the "passport identifier" provision. They contend that they are likely to succeed with regard to their assertion that the notification provision violates substantive due process and the right to travel, and with regard to their contention that the passport identifier compels speech and violates the right to due process.[2] The court finds that plaintiffs have not established likelihood of success with regard to either the claim that the notification provision is facially unconstitutional or the claim that the passport identifier provision is facially unconstitutional.

Plaintiffs allege that the notification provisions violate substantive due process and burden a fundamental right – the right to travel – and thus must be subjected to strict scrutiny. However, while there may be a fundamental right to domestic travel, there is no such fundamental right to international travel. See Haig v. Agee, 453 U.S. 280, 306-07 (1981); Freedom to Travel Campaign v. Newcomb, 82 F.3d 1431, 1438-39 (9th Cir. 1996).

Moreover, plaintiffs have failed to establish that they have standing to challenge the notification provision, because they have not identified a "certainly impending" future injury caused by this provision. To establish Article III standing, an injury must be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 149 (2010). A plaintiff's obligation to demonstrate standing is an "essential and unchanging" prerequisite to a court's jurisdiction to consider the plaintiff's claims. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

---

[2] The court notes, however, that at the hearing, plaintiffs' counsel stated that "for purposes of the motion only," plaintiffs' position is that they are likely to succeed with regard to the second and third causes of action, but not with regard to the first cause of action (or the other causes of action not listed here).

A plaintiff must establish standing for each claim asserted and for each form of relief sought. Oregon v. Legal Servs. Corp., 552 F.3d 965, 969 (9th Cir. 2009). Because plaintiffs in the present case seek only declaratory and injunctive relief, they must identify an "imminent prospect of future injury." Ervine v. Desert View Reg'l Med. Ctr. Holdings, 753 F.3d 862, 868 (9th Cir. 2014). Such a future injury "must be certainly impending to constitute injury in fact," and "allegations of possible future injury are not sufficient." Clapper v. Amnesty Int'l USA, 133 S.Ct. 1138, 1147 (2013).

Both the USMS and ICE HSI have had international notification provisions in place for over five years, and representatives of both agencies have indicated that the agencies do not anticipate that the nature of their notifications will change as a result of the IML. See Lechleitner Decl. ¶ 14; Mayo Decl. ¶ 10. Moreover, the Operation Angel Watch and USMS notification schemes currently in effect utilize procedures to identify only registered sex offenders who travel, and do not make notifications regarding persons not currently subject to registration requirements. See Lechleitner Decl. ¶ 12; Mayo Decl. ¶¶ 5, 7-8.

Because plaintiffs are not challenging the pre-existing notification provisions, they have not shown that an alleged injury resulting from implementation of the IML would be redressable. Further, any injury that plaintiffs might be asserting relating to such notifications would not be fairly traceable to the IML, and cannot be said to be "certainly impending." In light of these facts, the court finds that plaintiffs cannot show a likelihood of success on the notification claim.

As for the passport identifier provision, the statutory language makes clear that no such requirement is yet in effect, and that it will not take effect until after the Secretaries of Homeland Security and State and the Attorney General have developed a process for implementation, submitted a joint report to Congress regarding this proposed process, and, finally, certified that the process has been successfully implemented. See IML §§ 8(f), 9(a)-(b).

Defendants' declarant Jonathan M. Rolbin is the Director of Legal Affairs & Law

1  Enforcement Liaison for the Passport Services Directorate in the Bureau of Consumer
2  Affairs, U.S. Department of State.  Rolbin Decl. ¶ 1.  He is also the official charged with
3  responsibility for overseeing the U.S. State Department's role in the implementation of
4  the "passport identifier" provision set forth in IML § 8.  Rolbin Decl. ¶ 2.
5        Mr. Rolbin notes that § 4(e)(5) of the IML indicates that the new Angel Watch
6  Center will identify the individuals to whom the passport identifier requirements would
7  apply and convey this information to the State Department.  In addition, IML § 9 requires
8  that the Secretary of Homeland Security, the Secretary of State, and the Attorney
9  General develop a process to implement § 4(e)(5) and § 8 and submit a report to a
10 number of congressional committees regarding that process by 90 days after the date of
11 enactment, or May 9, 2016.  The report is to contain a description of the proposed
12 process and a timeline and plan for implementation of the process, and is to identify the
13 resources required to effectively implement the process.  Rolbin Decl. ¶ 4.
14       Mr. Rolbin states that as of the date of his declaration (March 2, 2016), the State
15 Department had not completed the necessary process to begin implementation of § 8,
16 and thus, no U.S. passports have received the unique identifiers required by the IML.
17 Rolbin Decl. ¶ 3.  Nor, he asserts, is the State Department prepared to begin placing
18 such identifiers on U.S. passports at this time.  Id.  Here, based solely on the statutory
19 language, it is not clear, for example, what form the identifier will take, which citizens will
20 be required to carry a passport with the identifier, or whether the identifier will appear on
21 the face of the passport or will be readable only by a scanner.  Thus, because significant
22 steps must be taken before the passport identifier can be implemented, the court finds
23 that plaintiffs' challenge is not yet ripe.
24       The ripeness doctrine avoids "premature adjudication" of disputes.  See Scott v.
25 Pasadena Unif. Sch. Dist., 306 F.3d 646, 662 (9th Cir. 2002).  It also "prevents courts
26 from deciding abstract issues that have not yet had a concrete impact on the parties."
27 Vieux v. E. Bay Reg'l Park Dist., 906 F.2d 1330, 1344 (9th Cir. 1990).  In order to
28 determine whether a claim is ripe, courts focus on "the fitness of the issues for judicial

8

1    decision" and "the hardship to the parties of withholding court consideration." Nat'l Park
2    Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003).

3         In short, the timeline and plan required to be submitted to the congressional
4    committees have not yet been completed.  While the State Department has identified
5    numerous steps that it must complete before the Department begins placing the passport
6    identifier into the passports of covered sex offenders, none of those steps had been
7    completed as of the date of Mr. Rolbin's declaration.  Rolbin Decl. ¶ 5.  Mr. Rolbin's "best
8    estimate" is that the State Department "will not be prepared to implement the passport
9    identifier provisions[ ] until at least some time in the fourth quarter of calendar year 2016."
10   Rolbin Decl. ¶ 6.

11        Mr. Rolbin also indicates in his declaration that the State Department "intends to
12   publish regulations regarding the denial/revocation of a passport without a passport
13   identifier."  Rolbin Decl. ¶ 5(c).  At the hearing, the court asked defendants' counsel
14   whether the promulgation of regulations relating to implementation of the IML would
15   require the publishing of proposed regulations followed by a public notice and comment
16   period.  Defendants' counsel was unable to provide a response.

17        The current status of the passport identifier provision – in particular, that the
18   implementation of the provision has not been settled – appears to have resulted in
19   plaintiffs being unable to articulate which acts they want the court to enjoin.  In their
20   proposed order, submitted with the motion, plaintiffs requested that the court enjoin the
21   Secretary of State "from affixing any mark on a United States passport that indicates, or
22   is intended to indicate, that the passport holder has been convicted of a sex offense, has
23   engaged in child sex trafficking, or is likely to engage in child sex trafficking."  This
24   request was phrased in the disjunctive.

25        However, at the hearing, plaintiffs' counsel indicated that plaintiffs would not
26   oppose the passport identifier "if it were limited to [those with] convictions for child
27   trafficking and tourism."  In other words, plaintiffs do not necessarily seek to enjoin the
28   entire passport identifier provision.  Plaintiffs' counsel reiterated that the purpose of the

IML was to address child sex trafficking, which she asserted was not what her clients were convicted of and not what resulted in their being required to register as sex offenders.[3]

For these reasons, the court finds that the claim regarding the passport identifier is not yet ripe for resolution. The consequence for purposes of the present motion is that plaintiffs cannot clearly articulate which acts they seek to have enjoined, or why. Accordingly, plaintiffs fail to show a likelihood of success on the passport identifier claim.

## CONCLUSION

In accordance with the foregoing, the court hereby DENIES plaintiffs' motion for a preliminary injunction.

**IT IS SO ORDERED.**

Dated: April 13, 2016

_____
PHYLLIS J. HAMILTON
United States District Judge

---

[3] Based on this argument and the declarations submitted by the individual plaintiffs in this case, the court questions whether plaintiffs are mounting a facial constitutional challenge, as they claim, as opposed to an as-applied challenge. Nevertheless, the court finds it unnecessary to resolve that issue at this time.